AO 91 (Rev. 11/11) Criminal Complaint (modified by USAO for telephone or other reliable electronic means)

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| CHASE ALEXANDER CRUMP | ) | |
| | ) | |
| | ) | 3:24-mj-54 |
| | ) | |
| *Defendant(s)* | | |

FILED
RICHARD W. NAGEL
CLERK OF COURT
1/25/24

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of Jan. 10, 2024, & Jan. 25, 2024 in the county of Montgomery in the Southern District of Ohio, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1), 841(b)(1)(C) | Distribution of Controlled Substances. |
| 21 U.S.C. § 856 | Maintaining drug-involved premises. |

This criminal complaint is based on these facts:

See affidavit of SA Eric McIntosh, FBI

☑ Continued on the attached sheet.

_____
*Complainant's signature*

SA Eric McIntosh, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Telephone *(specify reliable electronic means)*.

Date: 1/25/24

_____
Peter B. Silvain, Jr.
United States Magistrate Judge

City and state: Dayton, Ohio

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A CRIMINAL COMPLAINT**

I, Eric McIntosh, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of a criminal complaint charging Chase Alexander CRUMP ("CRUMP") with one violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), distribution of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, and one violation of Title 21, United States Code, Section 856, maintaining a drug-involved premises.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since August of 2003. My primary duties as a Special Agent consist of investigating criminal enterprises, narcotics investigations, organized crime, and violent crimes to include unlawful possession and possession with the intent to distribute controlled substances, as well as the associated conspiracies in violation of Title 21, United States Code, Sections 841, 843, and 846. I am familiar with federal firearms laws, and investigations into possession of a firearm by a convicted felon, possessing a firearm in furtherance of a drug trafficking crime and the associated violations of Title 18, United States Code, Sections 922 and 924. As part of my standard training to become a FBI Special Agent, I have received specialized training in the means and methods by which individuals and criminal enterprises conduct their illegal activities, as well as in the use of various investigative techniques used to uncover unlawful activities. Based upon my experience and training, I am familiar with the ways in which drug traffickers conduct their unlawful drug trafficking activity, including, but not limited to, their use of code words and numbers to conduct their transactions, their use of multiple telephones to conduct

their illegal activities, their methods for concealing narcotics and narcotics proceeds and their use of firearms, violence, and threats of violence to protect their criminal organization. I have received further specialized training concerning the interception of wire communications.

3. I have participated in various types of electronic surveillance, including the interception of wire communications, in investigations of drug traffickers, money launderers, and violent criminal enterprises. I am also familiar with, and have personally participated in, other normal methods of investigating criminal enterprises, including, but not limited to, visual surveillance, the questioning of witnesses, the use of informants, undercover operations, the use of pen registers, including pen registers in the form of digital analyzers, and the use of vehicle tracking devices to identify drug traffickers and reveal their methods of operation.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.

5. Since this affidavit is being submitted for the limited purpose of establishing probable cause authorizing the arrest of CRUMP, I have not included each and every fact and circumstance of which I am aware. I have set forth only those facts which I believe are necessary to establish such probable cause.

## PROBABLE CAUSE

6. On January 10, 2024, a law enforcement officer working in an undercover capacity (the "UC") purchased 24 ounces of methamphetamine from CRUMP for $3,300 in the parking lot of the Kohl's department store located at 10800 Innovation Drive, Miamisburg, Ohio.

The UC arranged the drug transaction by CRUMP's cell phone, (937) 432-8419[1] (the "8419 Phone"), at approximately 10:30 a.m. CRUMP provided the UC a new cellular telephone number, (937) 344-8439,[2] which CRUMP indicated he was transitioning to use to conduct drug transactions. Despite providing the new telephone number, the UC maintained contact with CRUMP, using the 8419 Phone, as the UC traveled to the area of the Kohl's department store parking lot.

7. At approximately 1:26 p.m., surveillance agents observed CRUMP's car, a 2015 grey Dodge Dart ("Dodge Dart"), arrive at the Kohl's parking lot, driven by CRUMP. CRUMP parked the Dodge Dart next to the UC's vehicle. CRUMP got out of the Dodge Dart and got into the front passenger seat of the UC vehicle. CRUMP produced a large bag which appeared to contain methamphetamine. The UC noted CRUMP appeared to be very nervous and appeared to be looking around the parking lot for law enforcement. In exchange for the drugs, the UC gave CRUMP $3,300 in pre-recorded buy money. CRUMP then exited the UC's vehicle, got back into the Dodge Dart, and departed the area, followed by surveillance. Surveillance agents observed CRUMP stopping frequently and changing directions of travel. Based on my training and experience, I know that these counter-surveillance techniques are commonly used by drug traffickers. CRUMP traveled to the apartment located at 6760 River Downs Drive, Apartment

---

[1] All of CRUMP's communications with the UC, including text messages and Facetime video calls, were placed either to or from this number. All calls made to or from this number during the UC's controlled buys with CRUMP were recorded. All text messages to or from the number were preserved.

[2] In my training and experience, it is common for drug dealers to often change the cellular telephone number they use to conduct drug transactions. It is also common for drug dealers to maintain multiple cellular telephones to use with various customers and narcotics suppliers. Drug dealers do this to evade detection by law enforcement. I have requested subscriber data for this phone number, but as of the date of this affidavit I have not received that information from the cell phone provider.

2B, Centerville, Ohio 45459 (the "River Downs apartment") immediately following the controlled buy. The River Downs apartment is registered in the name of a fictitious business, which is a frequent tactic used by drug traffickers in an attempt to conceal their association with "stash house" locations (meaning locations where drug traffickers primarily store drugs, drug proceeds, and other tools of the drug trafficking trade).

8. The bag the UC purchased from CRUMP contained a crystal substance that field tested positive for methamphetamine (total package weight of 660 grams ). On January 24, 2024, I received the results of the forensic analysis that was performed on the substance the UC had purchased from CRUMP. A forensic chemist with the Miami Valley Regional Crime Laboratory concluded that the substance was in fact 648 grams of methamphetamine, a Schedule II controlled substance.

9. Prior to the January 10, 2024, controlled purchase described above, CRUMP sold methamphetamine and/or cocaine to the UC on eight other occasions between November 2023 and January 2024. I have received laboratory results for all nine controlled buys the UC conducted with CRUMP. CRUMP sold the UC more than 2,400 grams of methamphetamine total during those nine transactions.

10. Between November 2023 and January 2024, I observed CRUMP's use of the River Downs apartment via physical and electronic surveillance. I know that CRUMP often traveled to or from the River Downs apartment immediately before and/or immediately after a drug sale which, based on my training and experience, indicates that he used it as a stash house.

11. On January 25, 2024, law enforcement executed search warrants at three locations associated with CRUMP: the River Downs apartment, CRUMP's parents' house, and CRUMP's primary residence. At the River Downs apartment agents discovered CRUMP's younger brother,

COLIN CRUMP, jumping out the second-story apartment building as SWAT entered the apartment. Agents arrested COLIN CRUMP. Inside the River Downs apartment agents discovered approximately half a kilogram of a substance that field-tested positive for fentanyl, a Schedule II controlled substance. The fentanyl was located in a utility area of the apartment that was easily accessible to any occupants. Based on my training and experience, I know it is common for drug traffickers to have a coconspirator guard and/or maintain a stash house in order to protect its contents from theft. I believe that COLIN CRUMP was acting in this capacity with respect to the River Downs apartment. Additionally, at CRUMP's parents' house agents discovered drugs and a firearm. CRUMP's parents said that the firearm did not belong to them, and confirmed that both CRUMP and COLIN CRUMP had access to the property.

12. I believe, for all the foregoing reasons, that CRUMP and COLIN CRUMP used the River Downs apartment to store drugs and facilitate the distribution of drugs. I also know, based on my training and experience, that the amount of fentanyl stored at the River Downs apartment is a trafficking quantity inconsistent with personal use.

//
//
//
//
//
//
//
//
//

## CONCLUSION

13. Based upon the information provided within this affidavit, I believe that probable cause has been shown to charge Chase Alexander CRUMP with one violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), distribution of a substance and mixture containing a detectable amount of methamphetamine, a Schedule II controlled substance, and one violation of Title 21, United States Code, Section 856, maintaining a drug-involved premises.

Respectfully submitted,

Eric J. McIntosh
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to via reliable electronic means on January  25 , 2024:

Peter B. Silvain, Jr.
United States Magistrate Judge